**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **EXPRESS WORKING CAPITAL, LLC,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No.: 3:15-CV-3792-S** |
| | § | |
| **ONE WORLD CUISINE GROUP, LLC;** | § | |
| **MANRAJ, INC.; PAVAN RESTAURANT** | § | |
| **GROUP, INC.; SHALIMAR, INC.;** | § | |
| **MANPRIY A, INC.; LIBBY'S MARKET,** | § | |
| **INC.; MELA GROUP, INC.; AMRICK** | § | |
| **SINGH PABLA; SURINDER SINGH;** | § | |
| **and JASWINDER SINGH PABLA,** | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

By electronic order of reference dated May 18, 2018 (doc. 82), this case has been referred

for full case management.  Before the Court for recommendation is *Express Working Capital, LLC's*

*Motion for Partial Summary Judgment*, filed June 15, 2017 (doc. 68).  Based on the relevant filings,

evidence, and applicable law, the motion should be **GRANTED**.

**I.  BACKGROUND**

On December 28, 2011, Express Working Capital, LLC (Plaintiff) entered into a "Future

Sales Receivables Agreement" (2011 Agreement) with defendants One World Cuisine Group, LLC

(OWC), Manraj, Inc. (Manraj), Pavan Restaurant Group, Inc. (Pavan), Shalimar, Inc. (Shalimar),

Manpriy A, Inc. (Manpriy), Libby's Market, Inc. (Libby's), Mela Group, Inc. (Mela), (collectively

Makers) and various other entities, "whereby [Makers] and those certain other companies sold

$1,986,897.74 worth of future credit card receivables to [Plaintiff] for a purchase price of

$1,439,780.97." (doc. 70 at 4, 8-17.)[1]  That same day, Plaintiff paid the purchase price of $1,439,780.97 to Makers. (*Id*. at 4.)  The 2011 Agreement provided that Plaintiff was purchasing Makers' "future receivables," defined as "future accounts and contract rights arising from and relating to the payment of monies from the use by . . . customers of . . . credit cards, charge cards, debit cards, and/or prepaid cards," at a discount. (*Id*. at 8-9.)  The agreement further stated that the purchase was "not intended to be nor shall it be construed as a loan" from Plaintiff to Makers, and because it was not a loan, Plaintiff did not "charge any interest, finance charges, points, late fees or similar fees," and there were "no scheduled payments and no repayment term." (*Id*. at 9.) Defendants Amrick Singh Pabla (Amrick), Surinder Singh (Surinder), and Jaswinder Singh Pabla (Jaswinder) (collectively Guarantors) assumed and guaranteed Makers' obligations under the 2011 Agreement, and agreed to assume full liability for the amount owed to Plaintiff in the event of a breach. (*Id*. at 4, 12-13, 17.)

"[Makers] and Guarantors stopped forwarding [Plaintiff's] share of credit card receivables before [Plaintiff] received the full amount due," however, with $1,273,228.60 remaining unpaid. (*Id*.)  Subsequently, on or about August 29, 2012, Plaintiff, Makers, and Guarantors "negotiated a settlement and entered into a promissory note made by [Makers] (and guaranteed by Guarantors) in favor of [Plaintiff] that established a payment plan" to cover the remaining amount owed (2012 Promissory Note). (*Id*.)  In 2013, Makers "missed several payments and made multiple partial payments." (*Id*.)

On May 15, 2014, Plaintiff, Makers, and Guarantors "negotiated and entered into a new and superseding promissory note . . . in favor of [Plaintiff] in the amount of $965,000.00, which included

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

an additional $150,000.00 advancement" by Plaintiff to Makers. (*Id*. at 4-5.) The parties agreed to "a lump sum charge of $15,000.00" to represent the full interest on the note (2014 Promissory Note). (*Id*. at 20.) Plaintiff sent the $150,000 advancement to Makers that same day. (*Id*. at 5, 36.) Under the terms of the 2014 Promissory Note, Makers were required "to make fifty-two weekly payments of $6,800.00 beginning on May 15, 2014, followed by weekly payments of $8,200.00 until the 2014 Promissory Note was paid in full with all unpaid sums being due and payable on the [m]aturity [d]ate" of May 16, 2016. (*Id*. at 5, 20.) The note provided that in the event of default or breach, and at Plaintiff's election, the note would become immediately "due and payable in full, and interest on the remaining unpaid principal amount . . . and accrued but unpaid interest shall thereafter accrue at the interest rate of eighteen percent . . . ." (*Id*. at 22.) Guarantors assumed full liability for the amount owed under the 2014 Promissory Note. (*Id*. at 5, 23, 26.) "Throughout late 2014 and all of 2015, [Makers] consistently made partial payments despite their obligations under the 2014 Promissory Note and [Plaintiff's] demand for full payment." (*Id*. at 5, 36-38.) Makers have made only one payment under the note since October 29, 2015. (*Id*. at 5, 38.)[2] The "outstanding principle balance of $497,064.80 remains unpaid," and "[t]he current balance due is $662,152.32, inclusive of default interest as provided for in the 2014 Promissory Note." (*Id*. at 5, 38.)

On October 7, 2014, Plaintiff and the Mantra Group Corp. (Mantra) entered into an Agreement "whereby Mantra sold $93,750.00 worth of future credit card receivables to [Plaintiff] for a purchase price of $75,000.00" (2014 Agreement). (*Id*. at 6, 39.) Plaintiff "advanc[ed] the purchase price of $75,000.00 to Mantra" that same day. (*Id*. at 6.) Under the 2014 Agreement,

---

[2] The Unsworn Declaration of Luke Schmille (Schmille Declaration) states that Makers have not made a single payment since October 29, 2015, but the attached ledger shows that a payment was made on July 11, 2016. (doc. 70 at 5, 38.)

Mantra agreed to remit 15% of its future receivables to Plaintiff each day.  (*Id*. at 39.)  The 2014 Agreement defines future receivables as "future accounts and contracts arising from and relating to the payment of monies from the use by . . . customers of . . . credit cards, charge cards, debit cards and/or prepaid cards . . . ."  (*Id*. at 40.)  It specifically states that Mantra and Plaintiff "agree that the Purchase Price paid to [Mantra] is a purchase of the Future Receivables and is not intended to be, nor shall it be construed as, a loan from" Plaintiff to Mantra.  (*Id*.)  It also specifically states that Plaintiff "is purchasing Future Receivables at a discount," and because it is not a loan, Plaintiff "does not charge any interest, finance charges, points, late fees or similar fees," and "there are no scheduled payments and no fixed repayment term."  (*Id*. at 41.)  "Amrik guaranteed Mantra's performance under the 2014 [Agreement]."  (*Id*. at 6, 46.)  "In the amendment attached to the 2014 [Agreement]," which details changes agreed to by Plaintiff and Mantra, "Mantra represented that its business . . . would be open . . . on or before November 8, 2014 and begin directing payment of the purchased receivables through Mantra's credit card receipts."  (*Id*. at 6, 47.)  "Mantra never opened its business," "processed any sales through a credit card processor approved by" Plaintiff, and "has not otherwise satisfied its obligations . . . except for making a few small sporadic payments, the last of which was received in January 2015."  (*Id*. at 6, 49.)  "The current outstanding balance owed . . . under the 2014 [Agreement] is $88,213.36."  (*Id*.)

The Agreements "do not contain an interest rate," and "[i]f the creation of future receivables slows, then so will the rate at which [Plaintiff] receives its purchased future receivables."  (*Id*. at 6.)  "The [Agreements] merely contain a discount [that does not increase or decrease and] that accounts for [Plaintiff] providing the purchase price before the receivables are created."  (*Id*. at 6-7.)  The amount owed under the Agreements "will not increase over time and will decrease only through the

4

forwarding of the future receivables to [Plaintiff]." (*Id*. at 7.) Plaintiff "internally books the obligations under the [Agreement]s in its financial books as purchases of future receivables," and "does not treat the advances as loans." (*Id*.)

On November 24, 2015, Plaintiff filed suit against Makers and Guarantors; its amended complaint asserts claims for breach of contract and promissory estoppel against all defendants, and a claim for fraud against Mantra and Amrik. (docs. 1; 13 at 1, 9-11.) Amrik and Jaswinder (collectively Defendants), separately filed identical *pro se* answers to the amended complaint, asserting usury as an affirmative defense for Plaintiff's claims for breach of the Agreements, and asserting counterclaims for usury and for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO). (docs. 37 at 1, 6-12; 38 at 1, 6-12.) On November 18, 2016, Mantra was dismissed without prejudice for Plaintiff's failure to serve it with process, and on December 16, 2016, default was entered against the remaining Makers. (docs. 45; 49.)

On June 15, 2017, Plaintiff filed its partial motion for summary judgment seeking judgment on its claims for breach of contract of the 2014 Promissory Note and 2014 Agreement and damages, and on Defendants "affirmative defense of usury and counterclaims for usury and RICO violations." (doc. 69 at 7-8, 13-30.) Defendants filed their response on June 23, 2017, and Plaintiff filed its reply on July 5, 2017. (docs. 72; 75.) This motion is now ripe for recommendation.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists

"if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is also "no genuine issue as to any material fact [if] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to her case and as to which she will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

In a case in which "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). This is a "heavy" burden for movant. *Copeland v. D&J Constr. LLC*, No. 3:13-CV-4432-N-BH, 2016 WL 1212128, at *2 (N.D. Tex. Feb. 16, 2016), *adopted by*, 2016 WL 1182620 (N.D. Tex. Mar. 28, 2016); *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04–CV–1866–D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue

in her favor. *Anderson*, 477 U.S. at 249.

"The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)). While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff.[3] *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *Martin v. United States Post Office*, 752 F. Supp. 213, 218 (N.D. Tex. 1990). However, the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

---

[3] Defendants are asserting claims as *pro se* counter-claimants. (*See* docs. 37 at 6-7; 38 at 6-7.)

7

### III.  BREACH OF CONTRACT

Plaintiff moves for summary judgment on its contract claims for breach of the 2014 Promissory Note and 2014 Agreement.  (doc. 69 at 13-16.)

The essential elements of a breach of contract claim in Texas[4] are: (1) the existence of a valid contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach.  *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).  "A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform."  *Case Corp. v. Hi-Class Bus. Sys.*, 184 S.W.3d 760, 669–70 (Tex. App.—Dallas 2005, pet. denied).  "Whether a party has breached a contract is a question of law."  *Gardocki v. J.P. Morgan Chase Bank*, No. 12-2254, 2014 WL 12537076, at *4 (S.D. Tex. June 11, 2014) (citing cases).  Damages are "an essential element of a cause of action for breach of contract under Texas law," *Lexxus Intern., Inc. v. Loghry*, 512 F. Supp. 2d 647, 666 (N.D. Tex. 2007), and "[t]he plaintiff bears the burden of demonstrating that he suffered a loss as a result of the breach."  *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003) (citing *Taub v. Houston Pipeline Co.*, 75 S.W.3d 606, 617 (Tex. App.—Texarkana 2002, pet. denied)).  Additionally, an absolute or

---

[4] "It is a long-recognized principle that federal courts sitting in diversity cases 'apply state substantive law and federal procedural law.'"  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)).  In this diversity case, the contracts were made in Texas and include choice of law clauses stating that the contracts are to be governed by Texas law.  (doc. 70 at 24, 44.)  Although Defendants cite to Massachusetts law, the parties do not dispute that Texas law applies.  *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1413 (5th Cir. 1995) (quoting *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)) ("[T]he law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue."); *see also Faloona by Fredrickson v. Hustler Magazine, Inc.*, 799 F.2d 1000, 1003 (5th Cir. 1986) (citing *Duncan*, 665 S.W.2d at 421) (contacts to take into account in determining the applicable law include the place of contracting and place of performance).

unconditional guaranty[5] included within an agreement imposes complete liability upon a guarantor in the event of a breach.  *Playboy Enters., Inc. v. Sanchez-Campuzano*, 519 F. App'x 219, 222–23 (5th Cir. 2013); *Universal Metals & Mach., Inc. v. Bohart*, 539 S.W.2d 874, 878 (Tex. 1976).

A.    **2014 Promissory Note**

Plaintiff argues that it is entitled to summary judgment on its claim for breach of the 2014 Promissory Note, and that Defendants, as guarantors of the note, are liable for damages as a result of the breach.  (doc. 69 at 13-15.)

"A promissory note is nothing more than a contract evincing an obligation to pay money." *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (citing *Amarillo Nat'l Bank v. Dilday*, 693 S.W.2d 38, 41 (Tex. App.—Amarillo 1985, no writ)).  Breach of a promissory note "arises when a demand for payment has been made and refused."  *Id.* (citing *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.)).  "To prevail on a motion for summary judgment to enforce a promissory note, a plaintiff must establish that: (1) a note exists, (2) the plaintiff is the legal owner and holder of the note, (3) the defendant is the maker of the note, and (4) a certain balance remains due and owing on the note." *Suttles v. Thomas Bearden Co.*, 152 S.W.3d 607, 611 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *see also Compass Bank v. Sunbelt Multimedia Co.*, No. H-11-964, 2014 WL 6087777, at *4 (S.D. Tex. Nov. 13, 2014) (citing *Truestar Petroleum Corp. v. Eagle Oil & Gas Co.*, 323 S.W.3d 316, 319 (Tex. App.—Dallas 2010, no pet.)).

To meet its summary judgment burden, Plaintiff provides in relevant part the Schmille

---

[5] "When a guaranty is unqualified and expresses no conditions to trigger the payment or performance, [other than default or breach,] it is an 'absolute guaranty.'" *Playboy Enters., Inc.*, 519 F. App'x at 222.

Declaration, a copy of the 2014 Promissory Note, and a copy of the ledger reflecting payments made under that note. (doc. 70 at 3-7, 20-38.) This evidence establishes that the 2014 Promissory Note is an agreement between Makers and Plaintiff to settle a dispute between them for a total of $965,000, Plaintiff signed the note as payee, Makers signed the note as makers, and Defendants signed the note as guarantors. (*Id*. at 5, 20-26.) Under the terms of the 2014 Promissory Note, Plaintiff agreed to loan Makers $150,000, and Makers agreed to pay to Plaintiff $6,800 per week for the first year, then $8,200 per week until the maturity date of May 16, 2016. (*Id*. at 20.) The full amount due under the note was to be paid by the maturity date, and in the event of default or breach, Plaintiff could elect to have the amount owed under the note "immediately become due and payable in full," with interest on the unpaid principal amount and unpaid interest accruing at an interest rate of 18%. (*Id*. at 20, 22.) Defendant signed the 2014 Promissory Note as guarantors, guaranteeing Makers' performance and payment of their obligations, and agreeing to be fully liable "for the entire outstanding Principal Amount" in the event Makers breached the note. (*Id*. at 5, 23, 26.) The Schmille Declaration also states that Plaintiff "provided the additional $150,000 advancement" to Makers, Makers made only partial payments and "have not made a single payment . . . since October 29, 2015," and there is an outstanding principle balance of $497,064.80 with the current balance due amounting to $662,152.32, "inclusive of default interest." (*Id*. at 5.) The ledger reflects a debited transfer of $150,000, and shows that every payment credited to the account after the first payment was below the minimum required payment amount. (*Id*. at 36-38.) It also shows that the remaining balance on the account as of June 5, 2017 was $497,064.80. (*Id*. at 38.)

This evidence is sufficient to establish beyond peradventure all of the essential elements of Plaintiff's breach of contract claim based on the 2014 Promissory Note: the Schmille Declaration

and the copies of the 2014 Promissory Note and ledger show that the note exists, Plaintiff is the payee and holder of the note, Makers entered into the note with Defendants as guarantors, and the principal balance of $497,064.80 remains unpaid under the note. *Suttles*, 152 S.W.3d at 611 (stating the elements for breach of a promissory note); *Fontenot*, 780 F.2d at 1194 (stating summary judgment burden). The evidence also establishes that Defendants are absolute guarantors of the note, subjecting them to joint and several liability for the damages resulting from the Makers' breach of the note. *Playboy Enters., Inc.*, 519 F. App'x at 222–23, 227 (agreeing with the district court that the absolute guaranty, contingent only on default, subjected the guarantor to liability).

With regard to the amount of damages it incurred, Plaintiff presented the Schmille Declaration and the ledger reflecting the payments under the 2014 Promissory Note. They establish that the principal balance of $497,064.80 remains unpaid under the note; that in the event of a breach or default, interest on the unpaid amount accrues at 18%; and that the current balance due, "inclusive of default interest as provided for in the 2014 Promissory Note," is $662,152.32. (doc. 70 at 5, 38.) Plaintiff has identified sufficient record evidence to support its claim that it is entitled to recover damages in the amount of $662,152.32, for Makers' breach of the 2014 Promissory Note. *Saad v. Valdez*, No. 14–15–00845–CV, 2017 WL 1181241, at *17–18 (Tex. App.—Houston [14th Dist.] Mar. 30, 2017, no pet.) (mem. op.) (awarding principal amount due plus 18% interest in damages as a result of default on a promissory note); *see Am. Gen. Life Ins. Co. v. Leisher*, No. H-14-2041, 2015 WL 12533095, at *3 (S.D. Tex. Dec. 9, 2015) (granting summary judgment on breach of promissory note claim and awarding the amount owed as damages as a result of the breach). Because it has identified evidence showing that Defendants signed the agreement as guarantors, and agreed to be fully liable for the amount owed under the note in the event of Makers' breach, Plaintiff

11

has identified sufficient evidence to support its claim that it is entitled to recover from them for the amount due under the note as a result of the breach. *See Playboy Enters., Inc.*, 519 F. App'x at 227. It has met its summary judgment burden.

The burden now shifts to Defendants to identify evidence in the record raising a genuine issue of material fact that Plaintiff is not entitled to recover on this claim for breach of the 2014 Promissory Note. *See Celotex Corp.*, 477 U.S. at 324. Defendants do not identify any summary judgment evidence, nor do they assert any affirmative defenses to this claim. (*See* docs. 37 at 5-6; 38 at 5-6; 72.) They instead respond that they admit "that the 2014 Promissory Note is authentic, the signatures are genuine and that the document speaks for itself as to its contents," and "that from about late in 2014 and in 2015," only partial payments were made with no payments made since October 29, 2015. (doc. 72 at 4.) Defendants contend only that Plaintiff's assertion that they are fully liable for the $662,152.32 owed by Makers is a "conclusion of law . . . and ultimate fact which requires no response," but deny Plaintiff's assertion to the extent a response is required. (*Id.* at 5.) They fail to address any of the elements of Plaintiff's breach of contract claim or to identify a genuine issue of material fact, however. They also do not dispute or present any evidence to dispute the amount that Plaintiff is entitled to recover for the breach of the 2014 Promissory Note.

Defendants have failed to meet their summary judgment burden to show a genuine issue of material fact on Plaintiff's claim for breach of the 2014 Promissory Note, or the amount of its damages. Plaintiff is therefore entitled to summary judgment as a matter of law on this claim.

**B.    2014 Agreement**

Plaintiff argues that there is no dispute as to any material fact for its breach of contract claim against Amrik as guarantor for breach of the 2014 Agreement. (doc. 69 at 15-16.)

12

To meet its summary judgment burden, Plaintiff provides in relevant part the Schmille Declaration, a copy of the 2014 Agreement and the attached amendment, and a copy of the ledger reflecting payments made under that agreement.  (doc. 70 at 3-7, 39-49.)  The 2014 Agreement and Schmille Declaration show that the 2014 Agreement is an agreement between Plaintiff and Mantra, under which Mantra agreed to sell future credit card receivables from its business in the amount of $93,750 for a purchase price of $75,000, and to remit 15% of its future credit card receivables to Plaintiff each day.  (*Id*. at 6, 39-40.)  They also show that Amrik signed the 2014 Agreement as guarantor for Mantra's obligations, and agreed to be fully liable for the amount due under the agreement in the event of a breach.  (*Id*. at 6, 45-46.)  The amendment attached to the 2014 Agreement and the Schmille Declaration show that Mantra also agreed to open its business by November 8, 2014.  (*Id*. at 47.)  The declaration and ledger establish that Plaintiff transferred "the purchase price of $75,000.00 to Mantra," and that Mantra never opened its business or satisfied "its obligations under the 2014 [Agreement] except for making a few small sporadic payments."  (*Id*. at 6, 49.)  The declaration and ledger also show that the current outstanding balance due under the 2014 Agreement is $88,213.36.  (*Id*.)

This evidence is sufficient to establish peradventure all of the essential elements of Plaintiff's breach of contract claim based on the 2014 Agreement.  The Schmille Declaration and copies of the 2014 Agreement, attached amendment, and ledger show that Plaintiff and Mantra, with Amrik as guarantor, entered into an agreement; Plaintiff agreed to pay Mantra the purchase price of $75,000; Mantra agreed to sell $93,750 in future credit card receivables, remit 15% percent of its future credit card receivables, and to open its business by November 8, 2014; Plaintiff performed by paying the full purchase price; and Mantra breached the agreement because it failed to open its business and

13

failed to satisfy its payment obligations under the 2014 Agreement. *See Mullins*, 564 F.3d at 418 (citing *Aguiar*, 167 S.W.3d at 450) (stating the elements of a breach of contract claim). The Schmille Declaration, 2014 Agreement, and ledger additionally show that Plaintiff sustained damages as a result of the breach because it has yet to receive the full amount of future credit card receivables it paid for under the 2014 Agreement. *See Sport Supply Group, Inc.*, 335 F.3d at 465 (noting that it is the plaintiff's burden to show that damages resulted from the breach). The evidence also establishes that Amrik, as absolute guarantor under the terms of the agreement, is liable for the damages resulting from Mantra's breach of the agreement. *See Playboy Enters., Inc.*, 519 F. App'x at 222–23, 227 (finding that the guarantor was subject to liability for default).

With regard to the amount of damages it incurred, Plaintiff presented the Schmille Declaration, 2014 Agreement, and the ledger reflecting the payments under the 2014 Agreement, which establish that Plaintiff purchased $93,750 in credit card receivables for $75,000, and the current outstanding balance that remains owed is $88,213.36. (doc. 70 at 6, 49.) In a breach of contract action, a party is generally entitled to recover the damages that occurred as a result of the breach. *Peyton v. Lincoln College of Tech.*, 3:10-CV-02144-P-BH, 2012 WL 13026812, at *3 (N.D. Tex. Sept. 17, 2012) (quoting *CQ, Inc. v. TXU Mining Co., LP*, 565 F.3d 268, 278 (5th Cir. 2009)) ("'The universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained. . . . .'"); *see also Pizza Hut, Inc. v. Lundy Enter., LLC*, No. 3:11–CV–0011–N, 2013 WL 12123949, at *3 (N.D. Tex. June 11, 2013) (the damages accrued must occur as a result of the breach of contract). Plaintiff has identified evidence of record sufficient to establish that it is entitled to recover the $88,213.36 still owed to it under the 2014 Agreement, and that Amrik, as a guarantor, agreed to be fully liable for the amount owed under the 2014 Agreement

14

in the event of Mantra's breach.  *See Playboy Enters., Inc.*, 519 F. App'x at 227.  Plaintiff has met

its summary judgment burden on its claim for breach of the 2014 Agreement.

The burden now shifts to Defendants to identify evidence in the record raising a genuine

issue of material fact that Plaintiff is not entitled to recover on this breach of contract claim.  *See*

*Celotex Corp.*, 477 U.S. at 324.  Defendants do not identify any summary judgment evidence,

dispute the terms of the agreement, or address the elements of this claim.  (*See* doc. 72.)  Defendants

also do not dispute or present any evidence to dispute that Plaintiff is entitled to recover the

$88,213.36 it is owed under the 2014 Agreement.  (*See id*.)  They have failed to identify a genuine

issue of material fact on at least one element of Plaintiff's claim for breach of contract for the 2014

Agreement, and as discussed more fully below, their affirmative defense of usury to this claim fails

as a matter of law.  Plaintiff is therefore entitled to summary judgment as a matter of law on this

claim.

## IV.  USURY

Plaintiff moves for summary judgment as a matter of law on Defendants' usury affirmative

defense as it relates to the 2014 Agreement, and on Defendants' counterclaims that the 2011

Agreement, 2014 Agreement, "and related promissory notes are usurious, invalid[,] and

unenforceable . . . ."  (docs. 37 at 6-7; 38 at 6-7; doc. 69 at 17-23.)

Under Texas law, "contracting for, charging, or receiving interest that is greater than the

statutory maximum is contrary to public policy, and creditors that charge usurious interest are

subject to penalties." *Express Working Capital, LLC v. Starving Students, Inc.*, 28 F. Supp. 3d 660,

665 (N.D. Tex. 2014) (citing Tex. Fin. Code §§ 302.001(c), 305.001).  Usurious interest is defined

as "interest that exceeds the applicable maximum allowed by law."    Tex. Fin. Code §

301.002(a)(17). In Texas, "the maximum legal rate of interest is 18%." *Bernie's Custom Coach of*

*Texas, Inc. v. Small Bus. Admin.*, 987 F.2d 1195, 1197 (5th Cir. 1993) (citing Tex. Rev. Civ. Stat.

Ann. art. 5069-1.07 (Vernon 1987)); *Threlkeld v. Urech*, 329 S.W.3d 84, 89–90 (Tex. App.—Dallas

2010, pet. denied); *see* Tex. Fin. Code § 303.009(a).

     "The essential elements of a usurious transaction are (1) a loan of money; (2) an absolute

obligation that the principal be repaid; and (3) the exaction from the borrower of a greater

compensation than the amount allowed by law for the use of money by the borrower." *Najarro v.*

*SA SI Intern., Ltd.*, 904 F.2d 1002, 1005 (5th Cir. 1990) (citing *Holley v. Watts*, 629 S.W.2d 694,

696 (Tex. 1982)). However, "it is fundamental that usury can arise only from a loan or forbearance

of money." *Pearcy Marine, Inc. v. Acadian Offshore Servs., Inc.*, 832 F. Supp. 192, 196 (S.D. Tex.

1993) (citing *Crow v. Home Sav. Ass'n of Dall. Cty.*, 522 S.W.2d 457, 459 (Tex. 1975)). Where

"parties intend to enter a transaction to sell accounts at a discount and characterize the transaction

as such, 'it cannot be a loan or line of credit' and any discount charged under such a transaction is

not interest." *Express Working Capital, LLC*, 28 F. Supp. 3d at 665–66 (citations omitted); *see* Tex.

Fin. Code § 306.103(b). If a transaction appears lawful on its face, the party claiming usury has the

burden of proof. *Am. Century Mortg. Inv'rs v. Reg'l Ctr., Ltd.*, 529 S.W.2d 578, 583 (Tex. Civ.

App.—Dallas 1975, writ ref'd n.r.e.). On the other hand, where the loan instruments show on their

face that the loan is usurious, the lender has the burden to prove that the terms of the loan resulted

from accidental and bona fide error. *Miller v. First State Bank*, 551 S.W.2d 89, 99 (Tex. Civ.

App.—Fort Worth 1977), *modified on other grounds*, 563 S.W.2d 572 (Tex. 1978).

A.    **2014 Promissory Note**[6]

Although Defendants do not appear to assert a claim that the 2014 Promissory Note is usurious, Plaintiff argues that to the extent they do assert such a counterclaim, the note "does not violate Texas usury laws."  (doc. 69 at 22-23; *see* docs. 37 at 6-7; 38 at 6-7.)[7]

To meet its summary judgment burden, Plaintiff provides a copy of the 2014 Promissory Note.  (doc. 70 at 3-7, 20-24.)  The note shows that rather than charging interest, the parties agreed that "a lump sum charge of $15,000.00 [would] represent full interest" on the note.  (*Id*. at 20.)  The note also provides that in the event of default, "interest on the remaining unpaid principal amount of the [n]ote and accrued but unpaid interest shall thereafter accrue at the interest rate of eighteen percent (18%)."  (*Id*. at 22.)  The principal amount, not including the lump sum charge, was $950,000.00.  (*Id*.)  The lump sum charge of $15,000 amounts to less than 2% interest on the principal, and the interest charged in the event of default also does not exceed the statutory maximum of 18%.  Accordingly, the evidence supports Plaintiff's assertion that the 2014 Promissory Note does not contain usurious interest rates.  Even if the 2014 Promissory Note was found to contain usurious interest rates, however, it contains a savings clause stating that Plaintiff "shall never be entitled to receive, collect or apply, as interest on this [n]ote, any amount in excess of the maximum lawful rate permitted by applicable law . . . ."  (*Id*. at 24.) This savings clause would "defeat[] any construction finding the note to be usurious."  *Franch v. HP Locate, LLC*, 3:14-CV-3247-L, 2015 WL 7251678, at *7–8 (N.D. Tex. Nov. 16, 2015) (citing *Berine's Custom*

---

[6] The 2014 Promissory Note appears to be the only promissory note at issue because it superceded the 2011 Promissory Note.  (*See* doc. 70 at 4-5.)

[7] Plaintiff's argument appears to address only the third usury element of whether the interest rate charged under the note was usurious.  (doc. 69 at 22-23.)

17

*Coach of Texas, Inc.*, 987 F.2d at 1198).  Plaintiff has met its summary judgment burden on this counterclaim as a matter of law.

The burden now shifts to Defendants to show a genuine issue of fact as to their usury counterclaim regarding the 2014 Promissory Note.  Defendants have failed to address Plaintiff's arguments in their response and therefore have not met their summary judgment burden on this counterclaim.  Accordingly, Plaintiff is entitled to summary judgment on Defendants' usury counterclaim as it relates to the 2014 Promissory Note as a matter of law.  *F.D.I.C. v. Condo Group Apartments*, 812 F. Supp. 694, 697–99 (N.D. Tex. 1992) (granting summary judgment on usury counterclaims).

**B.    Agreements**

Defendants argue that the 2011 and 2014 Agreements are void and unenforceable "commercial loans with interest at an effective rate in excess of the amount allowed" by law for which they "are entitled to recoup all payments made to [P]laintiff."  (docs. 37 at 7; 38 at 7.) Plaintiff contends that the Agreements are not loans, and therefore cannot be usurious.  (doc. 69 at 17-22.)

In *Express Working Capital, LLC*, 28 F. Supp. 3d at 665–71, the court analyzed agreements identical to the Agreements at issue here.  Under the terms of the agreements in *Express Working*, the defendants agreed to sell "a percentage of their future credit card receivables to [the plaintiff] for a fixed fee."  *Id.* at 663.  The agreements provided that a certain percentage of future credit card receivables would be automatically transmitted to the plaintiff, and defined future credit card receivables as the defendants' "'future accounts and contract rights arising from and relating to the payment of monies from the use of . . . credit cards, charge cards, debit cards and/or prepaid cards

. . . .'" *Id.* at 663, 667. The agreements also stated that the price paid was for the "purchase of the Future Receivables [at a discount] and [was] not intended to be, nor shall it be construed as, a loan," and because they were not loans, there was no charged interest, "no scheduled payments[,] and no fixed repayment term.'" *Id.* at 668. The parties in *Express Working* "disputed whether the [a]greements constitute[d] loans or account purchase transactions." *Id.* at 664–65. The defendants specifically argued that the agreements were unenforceable because they were usurious loans. *Id.* at 665. In analyzing "whether the [a]greements were loans or account purchase transactions," the court in *Express Working* first determined that the agreements were "properly characterized as 'accounts'" because the defendants "sold a portion of their right to receive payment" from the "'future accounts and contract rights'" that were created when customers purchased the defendants' "goods and services with credit cards, charge cards, debit cards, or prepaid cards . . . ." *Id.* at 667–68. The court then found that "[t]he language of the [a]greements evidence[d] a clear intent by the parties to enter into a series of account purchase transactions and not loans." *Id.* at 668. It also noted that the agreements were "missing several material terms that typically define a loan of money," specifically, interest rates, scheduled payments, and fixed repayment terms. *Id.* at 670–71. Because the agreements were not loans, the defendants' usury defense and counterclaim failed. *Id.* at 671. This Court finds no basis for disagreeing with the determination in *Express Working*.

To meet its summary judgment burden, Plaintiff provides the Schmille Declaration and copies of the 2011 and 2014 Agreements. (doc. 70 at 3-7, 8-13, 39-45.) The 2011 Agreement and 2014 Agreement are identical. (*Id.*) Both define future receivables as "future accounts and contracts arising from and relating to the payment of monies from the use by . . . customers of . . . credit cards, charge cards, debit cards and/or prepaid cards," and specifically state that Plaintiff "is purchasing

19

Future Receivables at a discount," and that the parties agree that the "purchase of the Future Receivables . . . is not intended to be, nor shall it be construed as, a loan . . . ." (*Id*. at 9, 40-41.) They also state that because they are not loans, Plaintiff "does not charge any interest, finance charges, points, late fees or similar fees," and "there are no scheduled payments and no . . . repayment term." (*Id*. at 9, 41.)  The Schmille Declaration states that Plaintiff does not treat the advances of the purchase price as a loan, and the Agreements do not have interest rates nor do they contain a payment schedule. (*Id*. at 6-7.)

Plaintiff has established that the Agreements contain language identical to the agreements at issue in *Express Working*.  As in *Express Working*, the language in the Agreements "evidences a clear intent by the parties to enter into" an account purchase transaction, not a loan.  28 F. Supp. 3d at 668.  The Agreements also do not state an interest rate, maturity date, or repayment term as required for a contract for a loan of money.  *See id*. at 670 (quoting *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992)) ("'In a contract to loan money, the material terms will generally be: the amount to be loaned, maturity date of the loan, the interest rate, and the repayment terms.'").  Accordingly, the evidence supports Plaintiff's claim that the Agreements are not loans, and therefore cannot support usury as an affirmative defense or counterclaim.  *Pearcy Marine, Inc.*, 832 F. Supp. at 196 (citing *Crow*, 522 S.W.2d at 459) (stating that there is no usury without a loan or forbearance of money).  Plaintiff has therefore met its summary judgment burden on this counterclaim as a matter of law.

The burden now shifts to Defendants to show a genuine issue of fact as to their usury affirmative defense for breach of the 2014 Agreement and their counterclaims regarding both Agreements.  They respond that Plaintiff is a lender, and the Agreements are unenforceable because

they are loans with usurious interest rates. (doc. 72 at 6-8.) As found above, however, the Agreements cannot be usurious because they are not loans, and Defendants do not point to any evidence raising a genuine issue of fact on their usury affirmative defense or counterclaims. Defendants have therefore failed to meet their summary judgment burden, and Plaintiff is entitled to summary judgment on their usury affirmative defense to the breach of the 2014 Agreement and their counterclaims as they relate to both Agreements as a matter of law. *See Express Working*, 28 F. Supp. 3d at 671 (finding that the defendants' usury defense and counterclaim lacked merit, and the plaintiff was entitled to summary judgment).

## V. RICO

Defendants also assert counterclaims for violations of sections (a)–(d) of RICO. (docs. 37 at 7-12; 38 at 7-12.) Plaintiff moves for summary judgment on Defendants' counterclaims for violations of RICO on grounds that "their pleadings do not state a RICO claim as a matter of law," and there is no "evidence to support a RICO claim . . . ." (doc. 69 at 23-29.)

In their simplest terms, the four subsections of the RICO Act, 18 U.S.C. § 1962, provide:

(a) a person who has received income from a pattern of racketeering activity cannot invest that income in an enterprise;

(b) a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering;

(c) a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a pattern of racketeering activity; and

(d) a person cannot conspire to violate subsections (a), (b), or (c).

*See Abraham v. Singh*, 480 F.3d 351, 354–55 (5th Cir. 2007); *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995). All four subsections have three common elements: "1) a *person* who engages in 2) a *pattern of racketeering activity*, 3) connected to the acquisition, establishment, conduct, or control

21

of an *enterprise*." *Crowe*, 43 F.3d at 204 (emphasis in original).

## A.      **Person**

Plaintiff contends that it "does not meet the RICO definition of a person" because Defendants' allegations "are not sufficient to establish . . . that [it] poses or has posed a continuous threat of engaging in acts of racketeering." (doc. 69 at 24-25.)

 A RICO "person" may be "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3); *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000). "[A] corporation . . . qualifies as a 'person' under RICO and may be subject to RICO liability." *St. Paul Mercury Ins. Co.*, 224 F.3d at 447 (quoting *Haroco, Inc. v. Am. Nat'l Bank & Trust Co.*, 747 F.2d 384, 401 (7th Cir. 1984)). The Fifth Circuit has stated that "[t]he RICO person must be one that either poses or has posed a continuous threat of engaging in acts of racketeering," and this "requirement may not be satisfied if no more is pled than that the person has engaged in a limited number of predicate racketeering acts." *Crowe*, 43 F.3d at 204 (quoting *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir. 1988), *cert. denied*, 489 U.S. 1079 (1989)).

To meet its summary judgment burden, Plaintiff points to the absence of evidence showing that it is a "person" under RICO. (doc. 69 at 24-25, 29; *see* doc. 75 at 5.) In pointing out the need for and lack of evidence on this necessary element, Plaintiff has met its summary judgment burden. *See Celotex*, 477 U.S. at 325; *see also Crowe*, 43 F.3d at 204 (stating that a "person" is a necessary element to support a RICO claim). The burden now shifts to Defendants to identify evidence in the record that raises a genuine issue of material fact regarding the "person" requirement. Defendants have failed to address this argument in their response and therefore have not met their summary

22

judgment burden on this element.

**B.    Pattern of Racketeering**

Plaintiff next contends that Defendants do not allege how the alleged predicate acts "constitute a 'pattern' of racketeering that violates RICO." (doc. 69 at 26-27.)

"'Racketeering activity' consists of two or more predicate offenses. *Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) (quoting 18 U.S.C. § 1961). The predicate offenses includes certain state and federal offenses enumerated in § 1961(1), including mail fraud, securities fraud, and racketeering. *See* § 1961(1); *Word of Faith*, 90 F.3d at 121. "A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity." *St. Paul Mercury Ins. Co.*, 224 F.3d at 441 (citing *Word of Faith*, 90 F.3d at 122); *see In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993). "It is this factor of continuity plus relationship which combines to produce a pattern." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original). Predicate acts are "related" if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240 (citing 18 U.S.C. § 3575(e)).

To meet its summary judgment burden, Plaintiff points to the Agreements, which have now been found not be usurious loans. (docs. 69 at 26-27; 70 at 8-13, 39-48.) It also points to the lack of evidence showing a pattern of racketeering. (doc. 69 at 24, 27, 29; *see* doc. 75 at 5.) By pointing out the need for and lack of evidence for this necessary element, Plaintiff has met its summary judgment burden. *See Celotex*, 477 U.S. at 325. The burden now shifts to Defendants to identify

evidence in the record that raises a genuine issue of material fact. Defendants do not address this argument in their response, however. (*See* doc. 72.) Accordingly, they have not met their summary judgment burden on this element.

## C.    Enterprise

Plaintiff also argues that "there is not a defined enterprise to support a RICO claim." (doc. 69 at 26.)

An enterprise is defined as "any individual partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The party alleging an association-in-fact must show "evidence of an ongoing organization, formal or informal, and . . . evidence that various associates function as a continuing unit." *Crowe*, 43 F.3d at 205 (internal citation and quotation omitted); *see Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (citing *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 439–40 (1987)). Continuity is a necessary attribute of an association-in-fact enterprise. *Delta Truck & Tractor, Inc.*, 855 F.2d at 243. An association-in-fact enterprise "(i) must have an existence separate and apart from the pattern of racketeering, (ii) must be an ongoing organization[,] and (iii) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Crowe*, 43 F.3d at 205; *Delta Truck*, 855 F.2d at 243. The association must exist for purposes other than to simply commit the predicate acts. *Elliot*, 867 F.2d at 881.[8]

To meet its summary judgment burden, Plaintiff asserts that no enterprise exists as a matter of law, and points to the absence of evidence showing a "defined enterprise to support a RICO

---

[8] "For purposes of § 1962(c), which prohibits the conduct of an enterprise's affairs through a pattern of racketeering activity," the enterprise must not only be "distinct from the series of predicate acts constituting racketeering activity, but . . . the RICO 'person' who commits the predicate acts [must also be] distinct from the enterprise." *Whelan*, 319 F.3d at 229 (citing *Bishop v. Corbitt Marine Ways, Inc.*, 802 F.2d 122, 123 (5th Cir. 1986)).

claim." (doc. 69 at 24, 26, 29; *see* doc. 75 at 5.) As noted, Plaintiff's summary judgment burden has been met by pointing out the need for and lack of evidence for this necessary element. *See Celotex*, 477 U.S. at 325. The burden then shifts to Defendants to identify evidence in the record that raises a genuine issue of material fact. Defendants do not address this argument in their response, however, and they have therefore also failed to meet their summary judgment burden on this element.

Because Defendants have failed to meet their summary judgment burden on the common elements of their RICO counterclaims, Plaintiff is entitled to summary judgment on these claims.[9] *MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g, Inc.*, 422 F. Supp. 2d 724, 737–38 (N.D. Tex. Mar. 17, 2006) (granting summary judgment on RICO claim where the plaintiff failed to establish a fact issue on one of the common elements of that claim); *see ABN Amro Mortg. Group, Inc. v. CBSK Financial Group, Inc.*, No. 4:04-CV-543-A, 2005 WL 8159206, at *1–2 (N.D. Tex. Oct. 17, 2005) (granting summary judgment on RICO claims where the plaintiff failed to "even hint at the existence of summary judgment evidence raising a fact issue . . . as to any theory of recovery . . . .").

## VI. RECOMMENDATION

Plaintiff's partial motion for summary judgment should be **GRANTED**, and judgment should be entered against Defendants in the amount $662,152.32 for the breach of the 2014 Promissory Note, and against Amrik in the amount of $88,213.36 for the breach of the 2014

---

[9] Although Defendants assert violations of all four subsections of RICO, it is unnecessary to address the elements of each individual subsection because they fail to meet their summary judgment burden on the elements common to all RICO claims. *Compare St. Paul Mercury Ins. Co.*, 224 F.3d at 439 (continuing "to the substantive requirements of each respective subsection" of RICO after finding that the three common elements were met).

Agreement.[10]  Remaining for trial are Plaintiff's breach of contract claim as it relates to the 2011

Agreement and its promissory estoppel claims against Defendants, and its fraud claim against

Amrik.

       **SO RECOMMENDED** on this 16th day of August, 2018.


_IRMA CARRILLO RAMIREZ_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

       A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


_IRMA CARRILLO RAMIREZ_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[10] Plaintiff states that the issue of damages remains as to the defaulting parties, and expressly seeks judgment against them for damages.  (doc. 69 at 7-8.)  To the extent that Plaintiff seeks the entry of judgment against the defaulting parties, it may file a motion for default judgment under Rule 55(b)(2) and the applicable Local Civil Rules for the Northern District of Texas.